UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE IRON WORKERS ST. LOUIS DISTRICT COUNCIL PENSION TRUST, et al., | ) ) ) ) |
| Plaintiffs, | ) ) Case No. 4:23-cv-00044-SRC |
| vs. | ) ) ) |
| KPS REBAR, LLC, et al., | ) |
| Defendants. | |

### **Memorandum and Order**

Plaintiffs—a labor organization and fiduciaries of various multi-employer benefit plans covered by ERISA—sued KPS Rebar, LLC, and its sole member and manager, Steven Kinkelaar, for, among other things, delinquent contributions those plans. KPS Rebar and Kinkelaar failed to appear after being validly served, and the Clerk of Court entered default upon Plaintiffs' motion under Rule 55(a) of the Federal Rules of Civil Procedure. Plaintiffs now apply for default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure and seek an order compelling a payroll-compliance audit so they can prove their damages.

**I.     Background**

Fiduciary Plaintiffs are the Board of Trustees of the Iron Workers St. Louis District Council Pension Trust; the Board of Trustees of the Iron Workers St. Louis District Council Annuity Trust; and the Board of Trustees of the Iron Workers St. Louis District Council Welfare Plan. Fiduciary Plaintiffs administer a number of multi-employer benefit plans—the IWSTLDC Trust Funds—in accordance with ERISA. Doc. 10 at ¶¶ 8–9; 29 U.S.C. § 1002. Labor-organization Plaintiff is Iron Workers Local No. 103 of the International Association of Bridge,

Structural, Ornamental and Reinforcing Iron Workers.  Local 103 is the authorized collection agent for a number of ERISA-covered funds—the Local 103 Funds.  Doc. 10 at ¶¶ 12–14.

Defendant KPS Rebar, by signing a participation agreement, bound itself to the provisions of the IWSTLDC Trust Funds' Trust Agreements.  *Id.* at ¶¶ 18, 20; Doc. 10-2.  Those Trust Agreements empowered the Boards of Trustees to adopt an "Audit and Collection Policy and Procedure," which governs the collection of delinquent employer contributions and the performance of payroll-compliance audits.  Doc. 10 at ¶ 22; Doc. 10-3.  KPS Rebar also signed a subscription agreement, binding itself to the collective-bargaining agreement to which Plaintiff Local 103 was a party.  Doc. 10 at ¶ 19; Doc. 10-1.  Under both the Trust Agreements and the CBA, KPS must make monthly reports of hours worked by covered employees and pay fringe-benefit contributions into the IWSTLDC Trust Funds and the Local 103 Funds.  Doc. 10 at ¶ 21.  Under the terms of the CBA and authorization forms, KPS Rebar must also remit to Local 103 certain payroll deductions from its bargaining-unit employees' paychecks.  *Id.* at ¶¶ 50, 66.  KPS Rebar has not discharged these obligations since July of 2021.  *Id.* at ¶¶ 28, 35, 44.

Plaintiffs filed this case on January 11, 2023, raising claims under Section 502 of ERISA, as amended, 29 U.S.C. § 1132; the LMRA; the Illinois Wage Payment and Collection Act; and tort law.  Plaintiffs allege that KPS Rebar failed to submit to a payroll-compliance audit under the terms of the Trust Agreements in violation of ERISA (count 1), failed to timely submit monthly contribution reports and contribution payments to the IWSTLDC Trust Funds in violation of ERISA (count 2), and failed to remit contributions and working dues assessments to Local 103 and the Local 103 funds under the terms of the CBA in violation of the LMRA (count 3).  Against Kinkelaar, Plaintiffs allege common-law tortious conversion for failure to remit

required payroll deductions to Local 103 (count 4) and violation of the Illinois Wage Payment and Collection Act for failure to remit payroll deduction to Local 103 (counts 5 and 6).

Defendants failed to plead or otherwise defend by the deadline, *see* Fed. R. Civ. P. 12(a)(1)(A)(i), and have entered no appearances.  Upon Plaintiffs' motion, the Clerk of Court entered default on March 2, 2023.  Docs. 14, 15.  Plaintiffs now apply for a default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure.  They also seek an order compelling KPS Rebar and Kinkelaar to submit to a payroll-compliance audit.  Doc. 16.

**II.     Standard**

Default judgments are not favored in the law, and before granting one, a court should satisfy itself that the moving party is entitled to judgment by reviewing the sufficiency of the complaint and the substantive merits of the plaintiff's claim.  *United States ex rel. Time Equip. Rental & Sales, Inc. v. Harre*, 983 F.2d 128, 130 (8th Cir.1993); *Monsanto v. Hargrove*, Case No. 4:09-cv-1628-CEJ, 2011 WL 5330674, at *1. (E.D. Mo. Nov. 7, 2011).  To obtain a default judgment under Rule 55(b), a party must follow a two-step process.

First, the party must obtain an entry of default from the Clerk of Court.  Fed. R. Civ. P. 55(a).  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *Id.*  Once the Clerk enters default, the defendant is deemed to have admitted all well-pleaded factual allegations in the complaint.  *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (citing *Thomson v. Wooster*, 114 U.S. 104 (1885)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

3

Second, the party must "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "[T]he entry of a default judgment . . . [is] committed to the sound discretion of the district court." *Harre*, 983 F.2d at 130 (citing *FTC v. Packers Brand Meats, Inc.*, 562 F.2d 9, 10 (8th Cir. 1977) (per curiam)); *see also Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996) (reviewing the entry of default judgment for abuse of discretion) (citations omitted). While courts deem all well-pleaded facts admitted upon default, "it remains for the [district] court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2688 at 63 (3d ed. 1998)).

A party entitled to default judgment must sufficiently prove its damages. *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818–19 (8th Cir. 2001). "[A] default judgment cannot be entered until the amount of damages has been ascertained." *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 97 (2d Cir. 1993)). "The court may conduct hearings or make referrals . . . , to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

In addition to provided for damages awards, ERISA expressly permits equitable relief to redress any act or practice that violates a covered plan. 29 U.S.C. §§ 1132(a)(3), 1132(g)(2)(E). "An audit constitutes an appropriate element of relief in an ERISA case where the amount of the delinquency is not known." *Painters Dist. Council No. 2 v. Com. Drywall Const., LLC*, No. 4:11-cv-1430-CAS, 2012 WL 996663, at *4 (E.D. Mo. Mar. 23, 2012) (citing *Int'l Painters &*

4

*Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.,* 239 F. Supp. 2d 26 (D.D.C. 2002)).

### III. Analysis

The Court begins by considering whether the unchallenged facts constitute legitimate causes of action. *Murray*, 595 F.3d at 871 (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2688 at 63 (3d ed. 1998)). In count 1, Plaintiffs bring an ERISA claim (inappropriately labeled a "breach of contract" claim when it actually is a claim for relief under ERISA), alleging that KPS Rebar did not comply with the terms of the plans. Doc. 10 at ¶¶ 1, 25–33. Plaintiffs allege that they bring counts 1 and 2 "under Section 502 and 515" of ERISA. Doc. 10 at ¶ 1. The Trust Agreement, to which KPS Rebar bound itself, requires KPS Rebar to "promptly furnish to the Trustees, on demand, such payroll records and data that they have with respect to the individual Employees benefiting from this Agreement and Declaration of Trust that the Trustees may require in connection with the administration of the Trust . . . ." *Id.* at ¶ 26 (quoting Doc. 10-1). KPS Rebar has refused to comply with this requirement, and Plaintiffs seek to enforce it by means of a court order under Section 502(a)(3), 29 U.S.C. § 1132(a)(3). Doc. 10 at ¶¶ 1, 25–33.

Under that provision,

> A civil action may be brought—
> . . .
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

Courts regularly require defendants to discharge their obligations in fringe-benefit disputes. *See, e.g.*, *Laborers Fringe Ben. Funds-Detroit & Vicinity v. Nw. Concrete & Const., Inc.*, 640 F.2d 1350, 1350–53 (6th Cir. 1981); *Cent. States, Se. & Sw. Areas Pension Fund v. N.E. Friedmeyer-*

5

*Sellmeyer Distrib. Co.*, 650 F. Supp. 978, 980 (E.D. Mo. 1987); *Trs. for IBEW , Loc. No. 1, Health & Welfare Fund v. Res. Elec. Sys., Inc.*, No. 4:20-cv-00218-JCH, 2020 WL 7353709, at *1, *4–5 (E.D. Mo. Dec. 15, 2020); *Painters*, 2012 WL 996663, at *4.  Plaintiffs also seek in count 1 attorney's fees and costs, audit fees, and any contributions, liquidated damages, and interest found to be due and owing based on the payroll-compliance audit.  Doc. 10 at pp. 6–7.  ERISA explicitly requires, or permits in the Court's discretion, each type of relief that Plaintiffs request.  *See* 29 U.S.C. § 1132(g).  Plaintiffs have pleaded a valid cause of action under ERISA in count 1.

In count 2, Plaintiffs bring an ERISA claim (again labeled a "breach of contract" claim) alleging that KPS Rebar failed to discharge its obligations under the terms of the plans to submit monthly contribution reports and contribution payments to the IWSTLDC Trust Funds for the period of July 2021 through December 2022.  Doc. 10 at ¶¶ 1, 35–39.  Here, too, Plaintiffs seek an order compelling KPS Rebar to submit the contribution reports and an award of contributions, interest, and liquidated damages found to be due and owing from those contribution reports.  *Id.* at pp. 8–9; *see* 29 U.S.C. §§ 1132(a)(3), (g); *see also Marshall v. Anderson Excavating & Wrecking Co.*, 8 F.4th 700, 706 (8th Cir. 2021) ("ERISA authorizes fiduciaries of an employee benefit plan to bring suit to compel the payment of delinquent fund contributions." (quoting *32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co.*, 935 F.3d 93, 98 (2d Cir. 2019))).  Plaintiffs have pleaded a valid cause of action under ERISA in count 2.

In count 3, Local 103 brings a breach-of-contract action under the LMRA.  Doc. 10 at ¶ 2.  The LMRA allows federal courts to hear "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ."  29 U.S.C. § 185.  Local 103 alleges that KPS Rebar breached the CBA by

6

failing to remit working dues assessments and contributions to Local 103 and the Local 103 Funds.  Doc. 10 at ¶ 41–46.  Plaintiffs seek to recover the unpaid contributions and working dues assessments as well as interest at the rate established by the CBA.  Doc. 10 at pp. 9–10.  Plaintiffs have pleaded a valid cause of action under the LMRA in count 3.

In count 4, Local 103 seeks to recover unpaid payroll deductions that the CBA required KPS Rebar to remit to Local 103.  *Id.* at ¶¶ 48–64.  Local 103 asserts this claim against Kinkelaar personally on a common-law tortious-conversion theory.  *Id.*  It alleges that Kinkelaar made the required deductions but pocketed the money for the benefit of himself or KPS Rebar.  *Id.* at ¶ 62.  But because any duty on the part of Kinkelaar or KPS Rebar to remit the deductions arises from the CBA, *id.* at ¶ 50, the LMRA preempts a common-law tort claim.  In *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, the Supreme Court held that survivors of deceased minors could not bring a state-law tort claim against a union because the tort claim was not "independent of the collective-bargaining agreement" and "any state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301."  495 U.S. 362, 368–69 (1990).

Here, § 301 preempts the common-law conversion claim.  To prevail on a conversion claim, a plaintiff must prove:  "(1) that he or she has a right to the property; (2) that he or she has an absolute and unconditional right to the immediate possession of the property; (3) that he or she made a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property."  *Kovac v. Barron*, 6 N.E.3d 819, 838 (Ill. App. Ct. 2014) (citing *Cirrincione v. Johnson,* 703 N.E.2d 67 (1998)).  The first and second elements alone invite LMRA preemption:  whether Local 103 had a right to the payroll deductions, and a right to possess them immediately, depends on the terms on the CBA.

7

As in *Rawson*, where the Supreme Court concluded that the union's duties arose not from tort law but from the CBA, the Court here concludes that any duty on Kinkelaar's part to remit payroll deductions arises from the CBA—and "the enforcement of that [CBA] and the remedies for its breach are matters governed by federal law." *Rawson*, 495 U.S. at 371. Plaintiffs have not pleaded a viable tort claim.

In counts 5 and 6, Local 103 seeks to recover the unpaid payroll deductions from Kinkelaar under the Illinois Wage Payment and Collection Act. The IWPCA requires employers to pay timely "wages" to all employees. 820 ILCS 115/3. Plaintiffs allege that Kinkelaar is an "employer" and that Local 103's members who worked for KPS Rebar are "employee[s]" within the meaning of 820 ILCS 115/2. *Id.* at 72–73. Kinkelaar "knowingly permitted KPS to . . . fail[] to remit payroll deductions to Local 103 and the designated depository." *Id.* at ¶ 79.

The IWPCA claims suffers several defects. First, Plaintiffs fail to explain how this claim survives in the face of the broad preemptive force of ERISA. 29 U.S.C. § 1144 ("[T]he provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title . . . ."); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). Next, even assuming the statute applied, the LMRA would preempt it here for reasons stated above. *See Rawson*, 495 U.S. at 367 ("[T]hough state courts have concurrent jurisdiction over controversies involving collective-bargaining agreements, state courts must apply federal law in deciding those claims, and indeed any state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301." (internal citations omitted)). Last, Plaintiffs do not attempt to explain how the unpaid payroll deductions qualify

8

as "wages" under the statute. While the IWPCA's definition of wages does include "contributions to an employee benefit, trust or fund [made] on the basis of a certain amount per hour, day, week or other period of time," 820 ILCS 115/8, Local 103 is a labor organization— not an "employee benefit, trust or fund." Doc. 10 at ¶ 12. The money owed to Local 103, then, does not qualify as "wages" under the statute. Local 103 has no IWPCA claims.

Plaintiffs have brought legitimate causes of action in counts 1 through 3. But because KPS Rebar—and Kinkelaar, as its sole member and manager—have not submitted to a payroll-compliance audit as the Trust Agreements require, Plaintiffs cannot prove damages for counts 1 through 3, and the Court therefore holds the motion for default judgment in abeyance. *Hagen*, 205 F.3d at 1042 (quoting *Enron*, 10 F.3d at 97). The Court orders KPS Rebar, by no later than August 18, 2023, to fully submit to a payroll-compliance audit pursuant to the Audit and Collection Policy and Procedure, Doc. 10-3, for the period spanning from July 1, 2021, to January 27, 2023, the date Plaintiffs filed their amended complaint. As part of the payroll-compliance audit, KPS Rebar must submit monthly contribution reports from the months of July 2021 to December 2022. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not . . . exceed in amount[] what is demanded in the pleadings."). By no later than September 8, 2023, KPS Rebar must either supplement the record with any proof establishing damages and attorney fees or, if KPS Rebar does not submit to an audit, file a report advising the Court on the status of this case.

### III. Conclusion

Accordingly, the Court denies Plaintiffs' motion as to counts 4, 5, and 6, and holds the motion in abeyance as to counts 1, 2, and 3. Doc. 16. The Court orders KPS Rebar to produce, by no later than August 18, 2023, all records necessary for Plaintiffs to complete a payroll-

9

compliance audit pursuant to the Audit and Collection Policy and Procedure, for the period of July 1, 2021, through January 27, 2023.

By no later than September 8, 2023, Plaintiffs must either:  (a) supplement the record with any proof establishing damages and attorney fees; or (b) if KPS Rebar does not submit to an audit, file a report advising the Court on the status of the case.

So Ordered this 19th day of July 2023.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE